

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

May 21, 1958

Honorable Bill Allcorn
Commissioner
General Land Office
Austin, Texas

Opinion No. WW-434

Re: Proper construction
of Article 5421c-3,
V.C.S., as same pertains
to the acceptance of
bids by the School Land
Board of the State of
Texas.

Dear Mr. Allcorn:

In connection with a recent lease sale conducted
by the School Land Board, the minutes of the Board as pre-
pared by the Secretary reflect that motion was made, seconded
and carried that all high bids, with the exception of a tract
not here involved, be accepted. Prior to the approval of the
minutes a protest was lodged with the Board against awarding
of a lease on the river bed in question to the high bidder,
and a hearing was had thereon. In the light of the controversy
that has arisen you ask our opinion in answer to the following:

"Is the approval of the minutes simply a
ministerial duty to the extent that the Board
is bound to approve the minutes of the meeting
if they correctly reflect the action taken by
the Board; or does the statute vest a discretion
in the Board to the extent that there is no final
acceptance of a bid until the minutes of a meeting
at which the acceptance occurs are approved?"

Under previous statutes, the State stood in the
position of an *offerer* with no authority to accept or reject
bids. See State v. Robison, 119 Tex. 302, 30 S.W.2d 292, where-
in the Court stated:

". . .The Commissioner has nothing to do
with acceptance. His duties, as fixed by the
statute, are not to contract as agent for the
State. He has no power, discretion or authority
under the act to accept or reject the bid of the

highest bidder. But the statute makes it
his duty to ascertain who is the highest
bidder, and to execute a lease to him. No
discretion, no power of rejection is re-
posed in him. His duties are fixed by law,
are mandatory and ministerial."

State v. Robison was decided in 1930, and ap-
parently because of this decision the succeeding Legislature
in 1931 passed Article 5421c, Section 8A, V.C.S., which placed
discretion to accept or reject bids on leases to river beds
in the Board of Mineral Development. In 1939 the Legislature
adopted Article 5421c-3, V.C.S., creating the School Land
Board. This Board took over the functions of the Board of
Mineral Development. The answer to your question depends upon
the proper interpretation of certain portions of Article 5421c-3
as follows:

Section 5 provides that the School Land Board shall
meet on the 1st and 3rd Tuesday of each month and that such
Board shall select a secretary.

Section 6 provides:

"The School Land Board shall keep a
record of its proceedings to be called its
minutes which shall include a docket on which
the secretary shall enter all matters to be
considered by the Board, the minutes and docket
to be subject to inspection by any citizen of
Texas. . ."

Section 8 provides that the amount of each bid to
buy or lease public free school land shall be entered on the
Board's docket and further states:

"The minutes shall show the fact of ac-
ceptance of a bid or the rejection of a bid
and the approval of the minutes will consti-
tute the approval of the act of acceptance or
the act of rejection, as the case may be."

Section 10 states:

"All awards or leases shall be issued by
the Commissioner of the General Land Office in
accordance with the minutes as approved by the
School Land Board."

Section 13 provides:

"The School Land Board shall have the right to reject any and all bids, but unless the Board elects to reject any and all bids, it shall be required to accept the best bid submitted."

The accuracy of the minutes as prepared by the secretary has not been challenged and they reflect that the high bid for the river bed tract in question was accepted by the Board on motion. Our problem then is to determine whether the Board is required to approve the minutes reflecting such action or whether it may decline to approve same, regardless of their accuracy, and may further review its previous acceptance of the bid with the right to arrive at a different conclusion.

The question is a very close one, and it must be admitted at the outset that the above quoted language from Section 8 of the 1939 statute is ambiguous and is subject to two different interpretations, either of which can be supported by convincing arguments. What is meant by the words: "the minutes shall show the fact of acceptance of a bid . . . and the approval of the minutes will constitute the approval of the act of acceptance. . ."? The fact or act of acceptance, it is argued, is the act of the Board when the bids are opened, awarding the lease to the high bidder, and the minutes are a ministerial act recording the facts as they occurred. With equal force it is argued that Section 8 means that the approval of the minutes is a discretionary thing giving the Board the opportunity to review its earlier act and to reach a different conclusion.

In these circumstances, we seek to ascertain the legislative intent, because the intention of the Legislature, as has often been said by our Texas courts, is the law. 39 Tex.Jur. 166, Statutes, Sec. 90. At the outset, it seems apparent that if the Legislature intended to give the Board the right to accept an offer and the right to cancel the action when the minutes are up for approval two or three weeks later, this would be an unusual arrangement and generally at variance with the customary method of entering into contractual agreements, but the Legislature could do this if that seemed to it to the best interest of the School Fund.

Our Supreme Court has said that in construing statutes "the circumstances of business usage, and the life and habits of the people at the time of the passage of the act" will be considered. Cousins v. Sovereign Camp W.O.W.,

120 Tex. 107, 35 S.W.2d 696. In the light of customary business usage in awarding contracts to the high bidder in one action and one action only, it would seem that before a construction requiring two acceptances is adopted, the statute language should be clear and unambiguous. Such is not true of the statute under study.

A canon of statutory construction is "that a statute be construed as a whole and all of its parts be harmonized, if possible, so as to give effect to the entire act, according to the evident intention of the Legislature". 39 Tex.Jur. 209, Statutes, Sec. 113. In construing the meaning of Section 8, we have studied the act creating the School Land Board as a whole. The act provides for the appointment of a secretary and that the Board "shall keep a record of its proceedings to be called its minutes. . .", which minutes are required to be open to public inspection. The language of Section 5 is mandatory. A record (minutes) "shall" be kept of the proceedings of the Board.

Again in Section 8 the language is mandatory. "The minutes shall show the fact of acceptance of a bid. . ." The approval of the minutes as so prepared "will constitute the approval of the act of acceptance. . ."

It seems to us that a correct disposition of this question requires a study of the nature of "minutes". Historically and traditionally, the minutes of a meeting faithfully record the several events that there transpired. They should contain nothing current. Rather they are a record of the past, a written record made against the time when memories grow dim and disputes arise as to what actually occurred. A minute is thus defined in Webster's New International Dictionary, 2nd Edition:

"5a. a memorandum or draft, as of instructions to an ambassador; a note to preserve the memory of anything; as to take minutes of a contract or of a debate.
b. Specif., pl. The official record made of the transactions or proceedings at a meeting of an organized body, as of the stockholders or directors of a corporation."

In connection with corporate minutes, it is said in 18 C.J.S. 610, Corporations, Sec. 191b:

"A corporation speaks through its records; hence it is said, public policy requires that the record of its acts must be kept faithfully in order to protect the rights of stockholders and persons doing business with it." (Emphasis added.)

The attitude of the Texas courts in relation to the function of minutes is indicated in <u>Coleman v. Zapp</u>, 105 Tex. 491, 151 S.W. 1040, 1041, wherein it is said:

"The judgment of a court is what the court pronounces. Its rendition is the judicial act by which the court settles and declares the decision of the law upon the matters at issue. Its entry is the ministerial act by which an enduring evidence of the judicial act is afforded.

"The failure of the minute entry to correctly or fully recite what the court judicially determined does not annul the act of the court, which remains the judgment of the court notwithstanding its imperfect record. Freeman on Judgments, § 38.

"Hence it is that from the earliest times the power of correcting or amending their records, by nunc pro tunc entry, so as to faithfully recite their action, has been possessed and exercised by the courts as an inherent right, . . . If a court is made aware that through mistake or omission its records do not recite its judgment as actually rendered, we do not doubt that <u>it is not only the right but the duty of the court</u>, of its own motion and after due notice to the parties, <u>to order the proper entry</u>. . .

"A proceeding of such character, whose only purpose is to have the judgment entry speak truly the judgment as rendered, neither asserts nor seeks the enforcement of any new right. <u>It presents no issue between the parties except in respect to the accuracy of the record</u>, and otherwise involves the adjudication of nothing between them. It is powerless to reopen the controversy as closed and sealed by the judgment, and makes no such attempt. <u>The inquiry under it is not what judgment might or ought to have been rendered, but only what judgment was rendered; and such is the sole issue to be determined.</u>" (Emphasis added.)

And in <u>Sloan v. Richey</u>, 143 S.W.2d 119 (Tex.Civ. App. 1940, error dism. jt. corr.), the court quoted from the <u>Coleman</u> case, supra, and further quoted from 15 R.C.L. 571, Section 85, as follows:

> "Although it has been said on high
> authority that a judgment is a solemn
> record, the entry or record of the judg-
> ment should not be confused with the
> judgment itself. The judgment is a judi-
> cial act of the court; the entry is the
> ministerial act of the clerk. The judgment
> is as final and complete when pronounced
> by the Court as when it is entered and
> recorded by the clerk. Although such entry
> may be necessary to give full force to the
> judgment as affecting the rights of third
> parties, the entry or recording of a judg-
> ment is not essential as between the parties
> themselves. A judgment therefore is con-
> sidered as having been rendered when the
> court has pronounced a decree which finally
> determines the rights of the parties and
> nothing remains to be done but for the clerk
> to record the entry of the judgment. The
> judgment itself is not what may be entered,
> but is that which is considered and delivered
> by the Court. Even if the judgment may be
> proven only by the record, yet it derives its
> force, not from its entry on the record, but
> from its rendition by the court."

And see City of Talladega v. Jackson Tinney Lumber Company, 95 So. 455, 458, 209 Ala. 106.

It follows from what has been said that we are of the opinion that the Board is under a duty imposed by law to keep full and correct records of its proceedings, and when the accuracy of the minutes prepared by the secretary of the Board reflecting acceptance of a bid is ascertained, the Board's duty is to approve the same. Hence, while the Board has heard evidence and argument ably presented pro and con as to the benefit or detriment to be derived from a rebidding of the lease on another basis, and while reasonable minds may and do differ as to wherein the State's best interest lies, it is our opinion that the Board accepted the high bid on March 10, and it has no authority under the law to reopen the matter. The entry of the minutes is a ministerial act and must reflect the facts which transpired at the meeting.

## SUMMARY

The minutes of the School Land Board as prepared by the secretary reflect that the Board accepted the high bid for a lease on a

Rio Grande river bed tract in Hidalgo County. The Board has the legal duty under Article 5421c-3, Sections 6 and 8, V.C.S., to approve such minutes, if satisfied as to their accuracy, and is without authority to reopen the matter for new bidding on another basis, the approval of minutes being merely ministerial.

Yours very truly,

WILL WILSON
Attorney General of Texas

By J. Arthur Sandlin
Assistant

JAS:bh

APPROVED:
OPINION COMMITTEE

Geo. P. Blackburn, Chairman

Edward Cazares
J.C. Davis, Jr.
Mark McLaughlin
James H. Rogers

REVIEWED FOR THE ATTORNEY GENERAL
BY:
        W.V. Geppert